**Application of Howard L. PARKS.**
**Patent Appeal No. 8990.**

United States Court of Customs
and Patent Appeals.
Aug. 16, 1973.

Nathan Cass, Westlake Village, Cal., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; R. V. Lupo, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to upon reconsideration, sustaining the examiner's rejection of claims 11 through 14 of appellant's application Serial No. 666,383 filed September 8, 1967, entitled "Interconnection of Stacked Layers." No other claims remain in this case. We affirm the board's decision.

Rejected claim 11 reads as follows:

11. A laminated structure comprising a first and a second sheet, each of said first and second sheets comprising at least one opposing surface formed of alternate ribs and grooves of predetermined width defined by said ribs,

at least one of said grooves comprising at least a portion of a recess leading to at least one edge of the surface of the sheet forming said at least one groove, said sheets being superimposed in opposed rib and groove surface relationship wherein said ribs of said opposing surface of one sheet are in angular relationship to the ribs of the opposing surface of said second sheet to form contacting load bearing portions of ribs of said opposing surfaces and contacting opposed groove portions of said opposing surfaces,

bonding material disposed in said grooves to bond the opposing surfaces of said first and second sheets together, the arrangement of said sheets being such that the bonding material in said grooves forms a fused interconnected monolithic structure comprising single and double thicknesses of said bonding material, and

said rib and groove predetermined widths being of dimensions to define predetermined desired load bearing mating unit areas wherein at least one said load bearing opposed rib contacting portions and at least a portion of one of said groove opposed portions are disposed, and wherein anomalies on the load bearing contacting portions are compensated for by ductile movement of displaced load bearing raised area material into said grooves.

Claims 12–14 are dependent from claim 11 and add that the load bearing areas are distributed in a predetermined pattern, or that the load bearing mating unit areas comprise areas equal to at least a predetermined portion of the area of the end surface of the conductive material connector.

Appellant's brief describes the invention as follows:

In accordance with the present invention, the opposing surfaces of adja-

cent sheets and the bonding material structure therebetween are constructed and arranged in a manner which not only solves the problems of solder starvation and surface anomalies, but which also achieves high quality mechanical and electrical interconnections of particularly high accuracy and reliability. More specifically, and as best shown in Figs. 5 and 6, the invention provides the opposing surface of each of the sheets 11 and 12 with alternate ribs 16 and grooves 17 of predetermined width.

[A7692]

The sheets 11 and 12 are superimposed in angular opposed rib and groove relationship with a bonding material 18 being disposed in the grooves therebetween. Such an alternate rib and groove construction and arrangement provides a particularly rugged and precise opposed contacting relationship for the sheets without interference from the bonding material, and also provides the further important advantage that the bonding material in the grooves forms a fused interconnected monolithic structure having both single and double thicknesses, as best illustrated in FIG. 6. Thus, not only are all portions of the resulting bonding material 18 interconnected so as to provide for greater strength and uniformity, but also, because the interconnected bonding material structure 18 has both single and double thicknesses, the surfaces available for bonding are maximized so as to greatly increase the quality and reliability of the resulting bond. Still further, the alternate rib and groove construction and arrangement is such as to readily provide for at least one of the grooves providing a recess leading to the edge of a sheet. This is of particular advantage in the laminated structure of the present invention, since all excess solder at all locations between the sheets can thus be conveniently and expeditiously removed, via this groove, because of the interconnected nature of the bonding material.

The prior patents relied upon by the examiner and the board are:

| Quarnstrom | 1,895,133 | 1933 |
| Stoddard | 2,530,552 | 1950 |
| Sear et al. (Sear) | 3,351,816 | 1967 |
| | (filed Feb. 4, 1965) | |

Sear discloses a stack of interconnected electrically conductive plates having recesses formed in opposed surfaces of

the plates and having dielectric material disposed in the recesses with a conductive path being formed between the recesses. Stoddard teaches that plates to be joined may be provided with longitudinal and transverse grooves which provide reservoirs from which the solder cannot be pressed out when the plates are soldered together under heat and pressure. Quarnstrom discloses a solder bond between knurled confronting surfaces of sheet metal and states that the knurled projections on one surface may be placed at random with respect to those on the other surface.

Claims 11 through 14 stand rejected as unpatentable over Sear in view of Quarnstrom and Stoddard under 35 U. S.C. § 103.

The board stated:

\* \* \* Quarnstrom shows in Fig. 1 a solder bond between knurled confronting surfaces of a sheet metal structure, and states on page 2, line 12 that the knurled projections of one surface may be placed at random with respect to those of the other surface. It is very unlikely that all the projections of one surface will fall inside the opposing recesses, or exactly opposite the projections on the other surface. Under these circumstances, the solder in the finished article will be monolithic, with some portions having twice the thickness of others. The ribs and grooves defined in appellant's claims do not exclude knurled surfaces. We believe it is obvious to workers of ordinary skill in this art that the solder bond of Sear et al can be replaced by the type shown in Quarnstrom, especially in view of Stoddard's Figs. 14–17 and his general discussion of the soldering problem. \* \* \* We believe that appellant's claims do not distinguish from the solder bond described in Quarnstrom, as the latter does produce "an effective bond" (page 1, last line) and some solder is always present between the two overlapped parts, especially if the parts are previously tinned (page 1,

line 94). Even if, as appellant urges, Quarnstrom might have some isolated solder portions, such portions would be monolithic and would satisfy the claims.

The knurling of the reference is not "random scoring or roughening," as suggested by appellant. Knurling is ordinarily a definite pattern. The term "predetermined" in claim 12 does not exclude the knurled pattern of the reference or even a random pattern if one "predetermines" that a random pattern is desired. Similarly, the same term in claim 13 covers any portion of the area.

Appellant contends that the knurling suggested by Quarnstrom does not disclose the alternate rib and groove construction recited in the claims on appeal, and contends that the Quarnstrom alternative disclosure of interfitting corrugations in overlapping edges teaches parallel ribs and grooves rather than the angular disposition claimed. We note that the knurling rollers illustrated in Fig. 2 of Quarnstrom drawings provide a specific cross-ribbing pattern and we also note that the suggested pre-tinning of opposing surfaces would produce solder always present between the overlapped surfaces. We find that Stoddard and Quarnstrom viewed collectively teach that a monolithic structure of stacked layers may be assembled by placing solder in a reticular pattern of grooves in the opposing surfaces of the respective layers, and that opposing layer faces may both be grooved if strengthening of the solder bond is desired.

We agree with the board that it would have been obvious to workers of ordinary skill in this art to replace the solder bond of Sear by the type taught by Quarnstrom, and we agree that it would have been obvious to provide rib and groove opposing surfaces superimposed in angular relationship.

The decision of the board is affirmed.

Affirmed.

BALDWIN, Judge (concurring).

While I do not agree that the effective disclosure of the proposed combination of references is as broad as is stated by the majority, I do agree with the board that the pertinent recitations in *these claims* do not differentiate the claimed structure from the Quarnstrom bond. The knurled embodiment shown in Quarnstrom has scored lines or channels crisscrossing to form parrallelograms on both of the surfaces to be joined. Joining these two surfaces in a random manner as also taught by Quarnstrom would result in a monolithic structure which the claim language is broad enough to include. The allegation in appellant's petition to the board for reconsideration that Quarnstrom's random embodiment would result in "at least some solder portions that will be isolated so that the required interconnected monolithic structure will *not* be obtained," reiterated in his brief, is not factually supported.